UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ABU HASHEM W.Q. MALICK, ET AL. | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION |
| | ) NO. 3:13-cv-00669-VLB |
| VS. | ) |
| | ) |
| JPMORGAN CHASE BANK, N.A., ET AL. | ) |
| | |
| Defendants. | ) NOVEMBER 3, 2014 |
| | ) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, the Defendant, JPMorgan Chase

Bank, N.A., ("JPMC" or "Defendant"), hereby submits this Memorandum of Law in

Support of its Motion for Summary Judgment as to all counts of the Plaintiffs' August 13,

2014dated Second Amended Complaint (the "Complaint").[1] (Doc. # 48).    In further

support of this motion, JPMC submits a Local Rule 56(a)(1) Statement of Undisputed

Facts and accompanying exhibits.   For the reasons that follow, JPMC is entitled to

judgment as a matter of law.

## I.    UNDISPUTED FACTS

### A.    The Plaintiffs' Allegations

The Plaintiffs commenced this action by Complaint dated May 10, 2013 to assert

various claims.  See Compl. (Doc. #1).  The Plaintiffs' claims arise out of damage to

Abu Hashem W. Q. Malick's residence during his incarceration which, while at times

salacious, are simply not supported by the Plaintiffs' own deposition testimony and

---

[1] JPMC previously filed a Motion to Dismiss as to Counts I, VI, VIII, XIII, XIV and XV along with the
respective claim for relief which remains pending before this Court.  See Mot. to Dismiss (Sept. 3, 2014).
In filing the instant Motion for Summary Judgment, JPMC does not waive and expressly continues to
assert all arguments set forth in the Motion to Dismiss.
3546577v.1

evidence. In response to JPMC's Motion for More Definite Statement, the Plaintiffs filed the operative Complaint,[2] which can be briefly summarized as follows:

The Complaint contains an unnumbered introductory paragraph that contains conclusory and unsupported claims that should be disregarded. Plaintiffs allege that Abu Hashem W. Q. Malick ("Hashem") became the owner of real property located at 4405 Black Rock Turnpike, Fairfield, Connecticut (the "Premises") by deed dated and recorded on January 8, 2007, *Id.* at ¶ 5, and that co-plaintiff Shujaat Q. Malick ("Shujaat"), Hashem's brother, contributed funds for the purchase of the Premises and is therefore allegedly an "equitable owner." *Id.* at ¶ 2, 6. The Plaintiffs' allegations also state that on or about June 30, 2007, Hashem mortgaged the Premises to Washington Mutual Savings Bank ("Washington Mutual") in the amount of $417,000.00, *Id.* at ¶ 7, the proceeds of which were used for major repairs to the existing 100-year-old structure and partial re-payment was provided to Shujaat. *Id.* at ¶ 8.

The Plaintiffs also detail Hashem's history with the criminal justice system, resulting in his incarceration for a period of time. *Id.* at ¶ 13-15. Although Plaintiffs concede that the Premises were unoccupied during Hashem's incarceration, Hashem alleges that it was never vacant or abandoned. During Hashem's incarceration, it is alleged that extensive damage, vandalism and theft took place to the Premises and property contained therein. The Plaintiffs have claimed that Safeguard and JPMC are liable for the damage on varying theories.

Based upon the foregoing, the Plaintiffs assert the following purported causes of action against JPMC. In Count I, the Plaintiffs allege that JPMC took control of the

---

[2] Beyond more clearly naming the causes of action, the operative Complaint is almost identical to Plaintiffs' Second Amended Complaint.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Premises for periods of time without lawful authority thereby causing harm to the real and personal property of Hashem and to the economic interest of Shujatt which constituted "conversion." In Count V, the Plaintiffs assert that the Defendants actions interfered with and prevented the Plaintiffs from maintaining, protecting and preserving the Premises and its valuable contents from damage, waste, theft and loss, and "either willfully or negligently caused damages to the Plaintiffs." In Count VI, it is further alleged that JPMC knowingly seized "personal property" without lawful authority or knowingly received and concealed stolen property of Hashem with the intent to deprive him permanently constituting theft and is liable for treble damages pursuant to Conn. Gen. Stat. § 52-564.

Count VIII, which asserted a purported cause of action for intentional or negligent infliction of emotional distress, is premised upon JPMC's purportedly "obtaining possession" of Hashem's deceased son's possessions, thereby permanently depriving Hashem of irreplaceable property or allowing others to do so was either intentionally or negligently engaging in extreme conduct with the intent to inflict or with the realization that it might cause severe or emotional distress to Hashem and it did so. In Count XIII, the Plaintiffs assert what appears to be a claim of negligent supervision as to Safeguard.

In Count XIV, the Plaintiffs assert a purported claim for unreasonable search and seizure and violation of due process, pursuant to both the Connecticut State and United States Constitutions. Finally, in Count XV, the Plaintiffs allege that JPMC's conduct was in violation of Conn. Gen. Stat. §§ 42a-110, *et seq.*, the Connecticut Unfair Trade

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Practices Action ("CUTPA"). Based upon the foregoing, the Plaintiffs seek various declarations and damages.

## B. Facts As Established By The Plaintiffs' Testimony And Documents

Despite the claims asserted by the Plaintiffs, their own testimony and documents offered in support of their claims simply do not support liability on the part of JPMC. As alleged in the Complaint, Hashem was incarcerated from November 2009 to May 25, 2012. Local R. 56(a)(1) Statement at 4. From 2008 to the present, no mortgage payments have been made. *Id.* at 5. Hashem claims that the reason he has not made any mortgage payments since 2008 was because of his incarceration. *Id.*

During Hashem's incarceration from November 2009 to May 25, 2012, no one was legally living at the Premises and it was unoccupied. *Id.* at 6. To the extent anyone including squatters did live at the Premises, Hashem has no personal knowledge of the time during his incarceration. *Id.* at 7. He, likewise, has no personal knowledge what was being done to the Premises during his incarceration and has "no clue" what happened to his personal belongings and appliances. *Id.* at 8-9. The only basis for Hashem's belief that JPMC and Safeguard are at fault for the damage to the Premises is his review of the police reports and Safeguard's disclosure. *Id.* at 11. Similarly, Shujaat has no personal knowledge of who caused the damage to the Premises or took the personal property. *Id.* at 10.

During Hashem's incarceration from November 2009 to May 25, 2012, he claims that his brother Shujaat was maintaining the Premises. Local R. 56(a)(1) Statement at 12. Hashem and Shujaat never had any conversations prior to or during Hashem's incarceration wherein Hashem asked or Shujaat agreed to maintain the Premises. *Id.*

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGELLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

at 13-14. Hashem never asked Shujaat or anyone else to secure his valuables. *Id.* at 15. He never asked Shujaat or anyone else to do anything regarding his bank or financial accounts during his incarceration. *Id.* at 16. He also did not ask Shujaat to make mortgage payments while he was incarcerated. *Id.* at 17.

During Hashem's incarceration from November 2009 to May 25, 2012, Shujaat would go to the Premises and stand in the driveway for 10 to 20 minutes. *Id.* at 18. Shujaat never mowed the lawn, cleaned up leaves or shoveled snow at the Premises. *Id.* at 19. Shujaat never paid any utility bills with respect to the Premises or entered the Premises to determine if there was heat. *Id.* at 20. Shujaat never repaired broken windows or tried to cover broken windows at the Premises. *Id.* at 24. During Hashem's incarceration from November 2009 to May 25, 2012, Shujaat visited the Premises "every now and then". The frequency ranged from once a week to once a month. *Id.* at 24.

During Hashem's incarceration, Shujaat only entered the Premises when accompanied by someone else because he believes the Premises to be haunted. *Id.* at 25. Shujaat never made any efforts to winterize the Premises. *Id.* at 26. From November 2010 to March 2011, Shujaat never entered the Premises. *Id.* at 27.

Following Hashem's incarceration in 2009, a friend took it upon himself to pay Hashem's utilities for a short period of time. *Id.* at 21. The electricity was disconnected a few months after Hashem's incarceration and certainly at some point prior to October 2011 for lack of payment. *Id.* at 23.

From December 2010 until January 2011, Shujaat was traveling internationally to Pakistan and did not visit the Premises or make arrangements for anyone else to visit

One Goodwin Square
225 Aylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

the Premises. The first time he visited the Premises after this trip was in March of 2011. *Id.* at 28.

The Premises is located close to the Merritt Parkway, a major route through Connecticut. It is located on Route 59, which is also a major route that runs through Easton. *Id.* at 29. It is located approximately four or five houses away from a motel. *Id.* at 30. The motel is within walking distance to the Premises. *Id.* at 31. Those individuals that knew of Hashem's incarceration and absence from the Premises included, but are not limited to: INS agents providing 24-hour surveillance from the house next door from 2001 until 2013; an individual that Shujaat spoke to when he saw him walking his dog near the Premises; various police officers; Abu Anas, the friend who paid utilities and visited the Premises with Shujaat; one of Shujaat's daughters; people at the mosque; and Hashem's friends. *Id.* at 33. From the state of the Premises during Hashem's incarceration, including the lack of electricity, Shujaat testified that it may have been possible to determine that it was vacant just from looking at the Premises. *Id.* at 34.

On or about March 11, 2011, Shujaat visited the Premises and observed that items were moved. He then returned on March 25, 2011 accompanied by police to enter the Premises, observed two windows were broken in the back of the Premises and confirmed that nothing was taken. *Id.* at 34. Following this incident, Shujaat did not repair the window and did not return until approximately October of 2011. At that time, he observed that the window and the back door were now open. *Id.* at 35.

After Shujaat first observed that someone had entered the Premises in March 2011, he felt unable to do anything to protect the Premises because his own work was

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGELLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

his priority. *Id.* at 36. He did not have time to fix the broken windows and was not asked to do so by Hashem. Shujaat may have thought that someone he knew was living at the Premises for short stays. *Id.* at 39. He testified that it was possible that someone was living at the Premises prior to March 25, 2011.

Hashem first contacted Safeguard on or about August 20, 2012 after his release from prison when he found a notice on the door of the Premises. *Id.* at 40. Neither Hashem nor Shujaat ever communicated with anyone at JPMC about the contents of the Premises prior to the damage and loss claimed. *Id.* at 41.

Hashem was told of the loss of his deceased son's belongings by Shujaat prior to Hashem's release from prison. *Id.* at 42. Prior to Hashem's reporting the damage sustained to the Premises, JPMC had no knowledge of the contents of the Premises. *Id.* at 43. Hashem claims to have experienced emotional distress which includes sadness, decreased appetite for a couple days, lack of thirst and lying in bed for quite a few days after his release from prison related to the loss of his deceased son's belongings. *Id.* at 44. Hashem never sought treatment from a mental health institution or other health care professional from his emotional distress. *Id.* at 45.

Hashem has no reasons to believe that Safeguard or JPMC has a personal vendetta against him. *Id.* at 46. He does not believe that JPMC personally came and took his personal property. *Id.* at 47. Hashem instead thinks that JPMC was negligent in its hiring of Safeguard because he claims Safeguard had a terrible reputation. *Id.* at 48. Hashem's opinion of Safeguard's reputation is based upon his own internet search that he performed just prior to instituting the instant lawsuit which he claims turned up a single article about a case in Michigan in which the homeowner returned from vacation

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

to find damage from sledgehammers.  *Id.* at 49.  This article, as attached to the Plaintiffs' prior Complaint was published on September 9, 2013 and discusses conduct that allegedly occurred in December of 2012, more than a year after the damage to the Premises.  *Id.* at 60.  Beyond taking over the house and hiring Safeguard, Hashem cannot identify anything that JPMC did wrong.  *Id.* at 50.

Hashem claims that JPMC's conduct was unethical in that it sent individuals to take over the house after he notified them that he had returned to living at the Premises. He was able to stop the individuals and the locks were not changed.  *Id.* at 51.  More specifically, on two occasions after Hashem's release, he claims that employees from Safeguard came to the Premises.  Hashem confronted them, told them he was the homeowner living there, and to leave, which they did.  *Id.* at 52.  On a third occasion, Safeguard put a sticker on the Premises.  *Id.* at 52.  Hashem claims that he was harmed emotionally by those individuals attempting to change the locks but this did not stop him from leaving the house for international travel to Pakistan on three occasions.  *Id.* at 53.

Hashem believes that if JPMC and Safeguard took over the Premises, it was their responsibility to maintain the Premises; if JPMC and Safeguard had not taken over the Premises, then it was Hashem's responsibility.  *Id.* at 54.  Both Shujaat and Hashem permitted Safeguard to complete maintenance to the Premises including cutting the grass.  *Id.* at 55.

JPMC wrote to Hashem on several occasions indicating that it had received notification the Premises was vacant and seeking confirmation that he was maintaining the Premises indicating that JPMC was required to secure the property to prevent damage and protect JPMC and Hashem's interests.  *Id.* at 56.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Despite the Plaintiffs' claims against Safeguard, LPS Field Services, LLC n/k/a ServiceLink Field Services, LLC ("LPS"), and not Safeguard, was providing preservation service to the Premises during the relevant time period when the Premises sustained damage and personal property was removed. *Id.* at 57. LPS indicates "4/20 someone broke locksets - took fridge, dishwasher, beds, dressers, not secure against intruders. Needs securing ASAP as someone has been inside - doors unsecure broken windows/locks". *Id.* at 58. On June 1, 2011, LPS observed and took photographs of missing appliances including the stove/range, refrigerator and dishwasher as well as interior damage including the removal of copper piping and baseboards. *Id.* at 58.

## II.    ARGUMENT

### A.    Standard For Summary Judgment

Summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED.R. CIV. P. 56(c). The moving party has the burden of showing that no genuine issue of material fact exists, and all reasonable inferences must be drawn in favor of the nonmoving party. *Jacobs Vehicle Sys., Inc. v. Pac. Diesel Brake Co.*, 424 F. Supp.2d 388, 391 (D. Conn. 2006) (citation omitted).

Once the moving party has demonstrated the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and point to evidence in the record showing that there is a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The nonmoving party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. *Id.* (citing *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

1986)). While the nonmoving party's evidence must be accepted as true, and the
nonmoving party must be given the benefit of all reasonable inferences, if the evidence
in the record, viewed in this manner, would be insufficient to support a jury verdict for
the nonmoving party, summary judgment may be granted to save the parties and the
public the expense of an unwarranted trial. _Knox v. City of New Haven_, 357 F. Supp. 2d
449, 451-452 (D. Conn. 2005) (citations omitted); _see also Anderson v. Liberty Lobby,
Inc._, 477 U.S. 242, 252, 106 S. Ct. 2505 (1986) (stating that the "mere existence of a
scintilla of evidence in support of the [non-movant's] position" will be insufficient; there
must be evidence on which a jury could "reasonably find" for the non-movant).

## B. Because Hashem Testified That JPMC's Wrongdoing Was Limited To Its Hiring Of Safeguard And Safeguard Was Not Hired Until After The Damage, JPMC Is Entitled To Judgment As A Matter Of Law

Hashem testified unequivocally that JPMC was not directly responsible for the
damage to the Premises and instead claims that JPMC's wrongdoing was limited to its
hiring of Safeguard when JPMC should have known of Safeguard's prior wrongdoing.
Because Safeguard was not the entity maintaining the Premises at the time the damage
occurred, JPMC's subsequent hiring of Safeguard, after the damage occurred, cannot
give rise to a claim against JPMC.

In response to a subpoena, LPS has produced various documents detailing the
preservation services provided to the Premises. _See_ Local R. 56(a)(1) Statement at 57.
Those documents, including photographs, indicate that LPS began providing
preservation services on July 20, 2009 and continued to provide services through April
of 2012. The records indicate "4/20 someone broke locksets - took fridge, dishwasher,
beds, dressers, not secure against intruders. Needs securing ASAP as someone has

- 10 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGELLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

been inside - doors unsecure broken windows/locks". _Id._ at 58. Consistent with Shujaat's account, LPS's reports during June 2011 indicate interior damage including vandalism and removal of copper pipe. _Id._ at 59. These records, along with JPMC's initial disclosure, establish that LPS and not Safeguard was providing preservation services at the time the damage occurred at the Premises.

The Plaintiffs' claims are based upon a clear misconception, that Safeguard was providing preservation services at the time of the damage in 2011. The allegedly improper hiring of Safeguard could not have caused of any damage to the Plaintiffs. Safeguard had no involvement with the Premises at the time of the damage to the Premises and removal of personal property in 2011. Instead, it appears that LPS was providing those services. Because the Plaintiffs' claims against JPMC are founded upon a basic misconception, that Safeguard was providing preservation services, JPMC is entitled to judgment as a matter of law.

## C. The Plaintiffs' Claims Are Based On Speculation And Conjecture As There Is No Admissible Evidence To Establish Who Or What Caused The Alleged Damage To The Premises

From the outset, the Plaintiffs' claims lack any factual foundation and are instead based upon nothing more than speculation and conjecture. In the absence of something more, JPMC is entitled to judgment as a matter of law as to all counts of the Plaintiffs' Complaint. "The essential elements of a cause of action in negligence are well-established: duty; breach of that duty; causation and actual injury." _Pelletier v. Sordoni/Skanska Construction Co._, 286 Conn. 563, 593 (2008) (internal quotations omitted); _see also DeOliveira v. PMG Land Assocs., L.P._, 105 Conn. App. 369, 377 (2008); _Paige v. St. Andrew's Roman Catholic Corp._, 250 Conn. 14, 24 (1999) ("To

- 11 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

prevail on a negligence claim, a plaintiff must establish that a defendant's conduct legally caused the injuries."). Causation is a necessary element of both negligence and recklessness. *See* *Alexander v. Town of Vernon*, 101 Conn. App. 477, 483 (2007).

The concept of legal causation is a hybrid comprised of both actual causation and proximate cause. *See* *DeOliveira*, 105 Conn. App. at 377. With regard to actual causation, the plaintiff must demonstrate, without resort to conjecture, that the alleged injury would not have occurred "but for" the defendant's alleged negligence. *See* *Alexander v. Town of Vernon*, 101 Conn. App. 477, 489 (2007) (finding based upon the speculative nature of the facts presented, the plaintiff could not satisfy his burden as to actual cause). Although actual causation is fact sensitive, a lack of evidence that the defendant's "negligent omission was a 'but for' cause of the resultant harm" is fatal to a negligence claim. *Id.*; *see also* *Coste v. Riverside Motors, Inc.*, 24 Conn. App. 109, 110-15 (1991) ("Conjecture exists as to whether the harm to the plaintiff would have ensued had the plaintiff . . . left earlier when driving conditions may have been better. Conjecture also exists as to whether the accident would have occurred had the road been better sanded or plowed, or had the plaintiff taken another route home, or had he driven a different make and model car, or had he been a better driver."); *Medcalf v. Washington Heights Condominium Assn., Inc.*, 57 Conn. App. 12, 18 (2000) ("The injury may likely have occurred without any negligence with respect to the intercom.").

As to proximate cause, the fundamental inquiry "is whether the harm that occurred was within the scope of foreseeable risk created by the defendant's negligent conduct." *DeOliveira*, 105 Conn. App. at 377 (citations omitted). In essence, "the test of proximate cause is whether the defendant's conduct is a substantial factor in bringing

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

about the [victim's] injuries." Moreover, the "existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection . . . . This causal connection must be based upon more than conjecture and surmise." *DeOliveira,* 105 Conn. App. at 377-78 (affirming entry of summary judgment in defendant's favor) (emphasis in original; citations omitted); *see also Paige,* 250 Conn. at 24 (finding insufficient evidence of a causal connection between the defendant's conduct and the plaintiff's injuries and, therefore, any inference would be based on nothing more than speculation and could not form the basis of the verdict in plaintiff's favor).

In *Paige,* the plaintiff sought to recover for injuries sustained when a boiler in a church was improperly activated during cleaning. 250 Conn. at 24. Because the boiler controls were found to be in working order, the cause of the plaintiff's injuries was presumably whoever turned the boiler on. There was no evidence, beyond discussion, of who potentially had access to the boiler room and boiler controls, to prove who turned on the boiler. While the plaintiff asserted various alternative theories of liability against the defendant church, including negligent supervision of employees, the court found that these theories were based upon nothing more than creative guesswork on the part of the plaintiff. *Id.* at 30 (finding that because evidence did not rule out the possibility that persons other than employees possessed keys to the boiler room and the boiler room was unlocked during the cleaning process, only "creative guesswork" could lead to a conclusion as to who caused the plaintiff's injuries).

Here, as in *Paige,* the Plaintiffs' claims are based upon nothing more than conjecture and surmise. *See* Local R. 56(a)(1) Statement at 47-48. Although the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Plaintiffs have asserted various counts all arising out of a theory that JPMC negligently or recklessly caused the damage to the Premises and loss of personal property, the Plaintiffs have failed to come forward with any admissible evidence to establish who caused that damage or how it occurred. *Id.*; *see also* Compl. at Counts V, VIII and XIII. In fact, the Plaintiffs have asserted claims against Safeguard, who had no involvement with the Premises in 2011. Local R. 56(a)(1) Statement at 57-59. Instead, the Plaintiffs simply claim that few people were aware that he was not living at the Premises while incarcerated for several years and therefore JPMC, or more likely in the Plaintiffs' opinion, Safeguard must be directly responsible for the damage. *Id.* at 9-11

To the contrary, it was clear from the collective testimony of both Hashem and Shujaat that quite a few individuals were aware of Hashem's incarceration including various friends, family and acquaintances. *Id.* at 32. In addition, the Premises is located close to the Merritt Parkway and on Route 59, both are major routes running through Connecticut. *Id.* at 29. It is also approximately four or five houses away from a motel which is within walking distance. Shujaat, who visited the Premises on various occasions during Hashem's incarceration, admitted that the Premises may have appeared vacant given the lack of electricity, the lack of maintenance of the yard and the absence of any cars in the driveway. *Id.* at 33.

Furthermore, to the extent the Plaintiffs' claims are based upon negligent hiring or supervision of Safeguard, the Plaintiffs' claims remain speculative and unsupported. *Id.* at 60. Beyond inadmissible hearsay, the Plaintiffs have not and cannot establish that Safeguard has the purported bad reputation or that the resulting damage was

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

foreseeable from the hiring of Safeguard. The Plaintiffs' claims, therefore, must fail as they are based upon nothing more than speculation and conjecture.

**D.** **Counts I And VI, As To Conversion And Theft Respectively, Are Legally Deficient In Failing to Properly Allege that JPMC Took Possession of their Personal Property or Had Any Intent to Do So**

In Counts I and VI, the Plaintiffs have asserted purported claims of conversion and statutory theft against JPMC. Despite these claims, Hashem has admitted that he does not believe that JPMC personally took his personal property. Local R. 56(a)(1) Statement at 47. Furthermore, Hashem does not claim that JPMC had the intent to do so or any personal vendetta against the Plaintiffs.

Conversion is "an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner of his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm." *Barretta v. Barretta,* 2011 WL 4031197, at *4 (Conn. Super. Ct. J.D. of Ansonia-Milford, Aug. 18, 2011) (citations omitted). The elements of civil theft are largely the same as the elements to prove the tort of conversion, but theft "requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion." *Deming v. Nationwide Mut. Ins. Co.,* 279 Conn. 745, 771 (2006); *see also Sullivan v. Delisa,* 101 Conn. App. 605 (2007). In either case, "it must be shown that (1) there was an intent to do the act complained of, (2) the act was done wrongfully, and (3) the act was committed against an owner." *Sullivan,* 101 Conn.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

App. at 620 (citations omitted). "The essential cause of action is a wrongful exercise of dominion over personal property of another." *Id.* (citations and quotations omitted). That said, it is not wrongful "to commit an act which would otherwise be a conversion if the act is, or is reasonably believed to be, necessary to protect the actor's land and the harm inflicted is not unreasonable compared with the harm threatened." *Id.* The Connecticut Supreme Court has clearly stated that "[w]rongful conversion can only apply to personal property." *Hartlin v. Cody*, 144 Conn. 499, 508 (1957).

In the case at hand, the Plaintiffs' claims of theft and conversion are contrary to the undisputed facts. As argued in the Motion to Dismiss, to the extent Hashem's claims are premised upon control or harm to "real" property, his claims fail. Furthermore, Hashem has admitted that JPMC did not act or have the intent to do the act complained of, the deprivation of Hashem's personal property including his deceased son's clothing. *See* Local R. 56(a)(1) Statement at 41, 43, 46-47; *see also Sullivan*, 101 Conn. App. at 620 (setting forth elements of conversion). Hashem has admitted that JPMC did not commit the alleged theft or conversion. Local R. 56(a)(1) Statement at 47. Instead, the Plaintiffs have vaguely alleged a connection between the changing of locks by JPMC and the alleged disappearance of personal property and/or vandalism to the house. There is nothing to suggest that JPMC wrongfully took Hashem's personal property from the Premises. Specifically as to theft, Hashem does not claim that JPMC had the intent to deprive Hashem of his personal property. Local R. 56(a)(1) Statement at 46-47. For these reasons, Counts I and VI are unsupported by the undisputed facts.

### E. Judgment Should Enter As To Count III As To Forcible Entry And Detainer For Lack Of Evidence Of Force

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

In Count III, the Plaintiffs claim that JPMC is liable pursuant to Conn. Gen. Stat. § 47a-43, *et seq.*, for forced entry and detainer. Because there is no claim or evidence that JPMC engaged force to enter the Premises or to retain possession of the Premises, judgment should enter in JPMC's favor.

Pursuant to Conn. Gen. Stat. § 47a-43(a), a cause of action for forcible entry and detainer may be brought:

> When any person (1) makes forcible entry into any land, tenement or dwelling unit and with a strong hand detains the same, or (2) having made a peaceable entry, without the consent of the actual possessor, holds and detains the same with force and strong hand, or (3) enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal of or detention of the personal property of the possessor, or (4) when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession. . . .

The Plaintiffs have not claimed or demonstrated that JPMC has engaged in forcible entry into the Premises and with a strong hand detained the Premises. *See Smith v. Ames*, 2014 WL 1876949 (Conn. Super. Ct. April 9, 2014) (the plaintiff must show that he was in actual possession at the time of the defendant's entry and that the defendant put him out of possession such that the plaintiff would have to break the law to regain possession). It has been unequivocally established that the Plaintiffs were not in actual possession of the Premises, were not residing at the Premises and were not paying the mortgage. Local R. 56(a)(1) Statement at 3-5, 18, 33.

JPMC did not engage in force of any kind. To the contrary, JPMC endeavored to save and protect what appeared, by all accounts, to be a vacant and abandoned property. Local R. 56(a)(1) Statement at 3-5, 18, 33, . No payments have been made on the mortgage since 2008. *Id.* at 3-5. There was no electricity or cars parked in the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

driveway. Shujaat never did any yard work and therefore there were leaves that had been collecting at least since Hashem's incarceration in November of 2009. Local R. 56(a)(1) Statement at 19-22. Neither Hashem, who was incarcerated, nor Shujaat visited the Premises from December 2010 to March 2011. Then, when Shujaat finally returned in March 2011, he observed a broken window. After recognizing that the Premises had been broken into by an unknown individual, as evidenced by a broken window and movement of objects, Shujaat continued to sporadically visit the Premises without entering or approaching the house. *Id.* at 27-28, 34-36, When individuals on behalf of Safeguard and/or JPMC were confronted by Hashem at the Premises, after his release from prison, they immediately left after learning that the Premises was in fact occupied. *Id.* at 52-53.

Based upon the foregoing, the undisputed facts establish that JPMC did not employ form or strong arm tactics to enter or take possession of the Premises while occupied by the Plaintiffs. Any efforts that were employed where for the purpose of preserving the Premises during periods of vacancy. Accordingly, judgment should enter in JPMC's favor on this count as well.

### F.    Judgment Should As To Count VIII As To Negligent And Intentional Infliction Of Emotional Distress

In Count VIII, the Plaintiffs alleged both intentional and negligent emotional distress arising out of Hashem's loss of his deceased son's personal belongings. Despite the lack of clarity in the Plaintiffs' claims, the undisputed facts establish that JPMC is entitled to summary judgment under either legal theory.

### 1.    Plaintiff's Negligent Infliction Of Emotional Distress Fail For Lack Of Duty, Causation Or Foreseeability

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

To sustain a cause of action for negligent infliction of emotional distress, a plaintiff must prove: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins Co.,* 262 Conn. 433, 444 (2003). Like all negligence claims, a legally cognizable negligent infliction claim requires allegations that the defendant owed the plaintiff a duty to prevent the plaintiff from experiencing such emotional distress. See *Perodeau v. Hartford,* 259 Conn. 729, 754 (2002); see also *Leonardo v. Ultimate Brands, Inc.,* 2009 WL 3644683 (Sept. 18, 2009); *Sunset Mortgage v. Agolio,* 2005 WL 1670795 (May 14, 2005) (granting motion to strike counterclaim, because "[t]he defendant does not allege what duty the plaintiff breached in attempting to enforce the note and/or mortgage"). Moreover, "the ordinary rule is that mere breach of contract does not warrant recovery of either punitive or mental distress damages." *Dowling v. First Fed. Bank,* 1995 WL 405827 (June 30, 1995) (citing Dobbs, Law of Remedies Vol. I, § 6.12, p. 251, Vol. III, § 12.5, pp. 107 *et seq.*); *see also Gardner v. St. Paul Catholic High Sch., Inc.,* 2001 WL 1517042 (Nov. 14, 2001).

Here, the Plaintiffs have not provided any evidentiary basis to establish the duty, causation and foreseeability elements. See *Leonardo,* 2009 WL 3644683. The Plaintiffs have not and cannot claim that JPMC breached any duty to them with regard to the Premises. By Hashem's own testimony, JPMC's only purported wrongdoing prior to his release from prison was hiring Safeguard. Local R. 56(a)(1) Statement at 48; *see also Sunset Mortgage,* 2005 WL 1670795 (granting motion to strike mortgagee's

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

counterclaim); _Torneiro v. Allingtown Fire District_, 2008 WL 975072 (Mar. 17, 2008) ("Because the plaintiff fails to establish the defendants owed her a legal duty pursuant to her negligent infliction of emotional distress claim, the defendants are entitled to judgment on Count Two."). Furthermore, because, as discussed above, Safeguard was not providing preservation services in 2011 when Hashem's deceased son's property was removed from the Premises, JPMC's alleged conduct in hiring Safeguard cannot have been the cause of the damage to the Premises and loss of his son's belongings. Local R. 56(a)(1) Statement at 57-59. As discussed above, the Plaintiffs have no personal knowledge of who was responsible for the damage and loss of personal property. For this reason as well, Hashem's emotional distress, even if proven, cannot be attributed to JPMC.

Moreover, the Plaintiffs' claims lack foreseeability. As stated above, to establish a claim of negligent infliction of emotional distress, a plaintiff must prove the following elements: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." _Carrol_, 262 Conn. 444. In negligent infliction of emotional distress claims, unlike general negligence claims, the foreseeability of the precise "nature of the harm to be anticipated [is] a prerequisite to recovery even where a breach of duty might otherwise be found." _Perodeau_, 259 Conn. at 754. The foreseeability element of this tort "is more specific than the standard negligence requirement that an actor should have foreseen that his tortious conduct was likely to cause harm." _Olson v. Bristol-Burlington Health District_, 87 Conn. App. 1,

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

5 (2005). Here, Hashem has admitted that JPMC had no knowledge that the Premises contained the belongings of his deceased son. Local R. 56(a)(1) Statement at 41-43. Furthermore, the Plaintiffs have failed to bring forth any admissible evidence to suggest that JPMC's conduct "created an unreasonable risk" of causing the Plaintiffs' emotional distress. For these reasons, summary judgment should enter in JPMC's favor.

2. Plaintiff's Intentional Infliction of Emotional Distress Claim Fails For Lack of Intent

To sustain a cause of action for intentional infliction of emotional distress "it must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Mazzella v. J.E. Robert & Co. of New England*, 2001 WL 1132148 (Aug. 17, 2001) (citing *Appleton v. Board of Educ.*, 254 Conn. 205, 210 (2000)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Paul D. Scappaticci et al. v. G.E. Capital Mortgage Services, Inc.,* 2000 WL 1868219 (November 27, 2000) (quoting *Appleton v. Board of Education*, 254 Conn. 205, 210-11 (2000). "[M]erely alleging 'threats' is insufficient to allege conduct which is extreme and outrageous." *Id.*

Here, the Plaintiffs fail to sufficiently demonstrate that JPMC's conduct was in some way extreme and outrageous. In essence, Hashem claims that JPMC hired Safeguard to preserve the Premises while he was incarcerated for several years and

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

the Premises left unoccupied. While the evidence establishes that Safeguard was not providing these services in 2011, as discussed above, this conduct does not establish extreme and outrageous behavior in any event. Furthermore, Hashem admitted that JPMC had no knowledge of his deceased son's belongings that went missing, causing his emotional distress. Likewise, Hashem does not believe that JPMC has a personal vendetta against him. Local R. 56(a)(1) Statement at 46. Finally, the Plaintiffs have not established that they experienced severe emotional distress. *See Aviles v. Wayside Auto Body, Inc.*, 2014 WL 4932993 (D.Conn. Sept. 30, 2014) (Bryant, J.). Based upon the undisputed evidence, judgment should enter as to Count VIII as well.

### G. Count XIV Improperly Alleges Constitutional Violations Against A Private Actor for Which No Private Right of Action Exists

In Count XIV, the Plaintiffs allege that JPMC and Safeguard's conduct violated the Plaintiffs' rights to be secure in their person, houses, papers and possessions from unreasonable searches and seizures in violation of the Connecticut Constitution Article First, Section 7, and the Fourth Amendment of the United States Constitution and deprived the Plaintiffs of their property without due process in violation of the Fifth Amendment. Because such a claim cannot be asserted against a private entity, judgment should enter in JPMC's favor as to Count XIV.

Under 42 U.S.C. §1983, "constitutional torts are only actionable against state actors or private parties acting 'under the color of' state law." *Betts v. Shearman*, 751 F.3d 78, 84-85 (2d Cir. 2014). Furthermore, the Second Circuit has held that "a claim against a private entity must 'allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.'" *Id.* (citations omitted); *see also Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (finding the Fourteenth (and its

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

counterpart provision of the Fifth) Amendment 'erects no shield against merely private conduct, however discriminatory and wrongful.'"). In other words, "a private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'" *Id.* (quoting *Ciambriello*, 292 F.3d 324).

Here, the Plaintiffs' claims do not implicate the State or its agents. Instead, the Plaintiffs improperly assert constitutional claims against JPMC, a private actor. *See generally* Local R. 56(a)(1) Statement. The Complaint is devoid of any claim that JPMC was acting "under the color" of state law or was engaged in any conduct in concert with the State or even a governmental entity. *Betts,* 751 F.3d at 84-85. Accordingly, judgment should enter as to Count XIV, which improperly asserts claims of constitutional violations against a private entity.

### H. Count XIII Should Likewise Fail Because Safeguard Was Not Providing Services To The Premises At The Time Of The Damage And The Plaintiffs Have Not Demonstrated Safeguard Had A Propensity To Cause Harm

The Plaintiffs claim that JPMC was negligent in its hiring of Safeguard because JPMC knew or should have known of Safeguard's alleged wrongful conduct. As discussed above, the undisputed facts establish that Safeguard was not involved in the preservation of the Premises until after the subject damage occurred. Beyond this, the Plaintiffs' claim also fails because negligent hiring or supervision cannot be asserted against JPMC for its contracting with another corporate entity. Finally, the Plaintiffs cannot establish foreseeability where, as here, the prior alleged conduct occurred subsequent to the Plaintiffs' claimed injury.

In Connecticut, "employers may be directly liable for negligent hiring, retention or supervision of an <u>employee</u> who, through a tortious act injures a third party." *Seguro v.*

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

*Cummiskey*, 82 Conn. App. 186, 196 (2004). No such liability exists where one corporate entity retains the services of another corporate entity. Furthermore, "the elements for negligent supervision are nearly the same as those for negligent hiring, the only difference being at what point the defendants became aware of the actor's propensity for tortious conduct." *Bertocki v. Williams*, 2010 WL 3584951, *4(Conn. Super. Ct. Aug. 16, 2010) (citations omitted). "The majority of Superior Court decisions considering the issue have required the plaintiff in a negligent supervision action to plead and prove injury by the defendant's negligence in failing to properly supervise an employee who the defendant had a duty to supervise and who the defendant knew or should have known would cause the injury." *Id.* In either case, "a plaintiff must allege facts that support the element of foreseeability." *Id.*

Here, the Plaintiffs are improperly seeking to impose liability upon JPMC for the purported negligent supervision of a separate and distinct corporate entity. Furthermore, the Plaintiffs have not and cannot establish that it was foreseeable that Safeguard would cause the Plaintiffs' injury. That is so because the Plaintiffs base foreseeability on Safeguard's subsequent alleged bad conduct and foreseeability must be based upon prior information. Local R. 56(a)(1) Statement at 60. Even if the article is admissible, which is disputed, it was published long after the Plaintiffs' damage occurred. Because the September 9, 2013 article did not exist, it could have had no impact on JPMC prior to or at the time of the damage in 2011. *Id.* at 60. Accordingly, judgment should enter in JPMC's favor on this count as well.

### I. The Plaintiffs Have Presented No Admissible Evidence To Support A CUTPA Claim

- 24 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGELLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). Under Connecticut law, "[i]t is well settled that in determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the Federal Trade Commission for determining when a practice is unfair: (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen] . . . ." See Keller v. Beckenstein, 117 Conn. App. 550, 565-66, cert. denied, 294 Conn. 913 (2009). Accordingly, in order to allege a legally sufficient claim, the plaintiff must show that a bank's actions "offend public policy," are "unfair," "immoral, unethical, oppressive or unscrupulous," and that the plaintiff has sustained substantial injury. Washington Trust Co. v. Alland Assoc., 1991 WL 61395 (Apr. 9, 1991) (quoting Conaway v. Prestia, 191 Conn. 484, 492-93 (1983)); see also Silber v. Dynasty Chinese Rest., Inc., 34 Conn.L.Rptr. 455 (April 29, 2003) (substantial injury "is the most important of the three prongs of the 'cigarette rule'").

Furthermore, "[a]ll three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three . . . ." Keller, 117 Conn. App. at 566. As a result, "a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy . . . " Id.;

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

*Empire Mortg. L.P. v. Sinotte,* 1998 WL 352049, \*3 (June 15, 1998) (analyzing same in the context of mortgages). It is well-established under Connecticut law that a claim under CUTPA must be pled with particularity to allow for evaluation of the legal theory upon which the claim is based. *See S.M.S. Textile Mills, Inc. v. Brown, Jacobson,* 32 Conn. App. 786, 797, cert. denied, 228 Conn. 903 (1993).

Here, the Plaintiffs have failed to prove that JPMC engaged in conduct sufficient to satisfy any prong of the cigarette rule. JPMC's allegedly improper conduct in hiring of Safeguard does not offend public policy, are unfair, immoral, unethical, oppressive or unscrupulous, or that the Plaintiffs have sustained substantial injury. *See Edmond v. Promus Hotel Corp.,* 2001 WL 92294 (Jan. 17, 2001) (striking CUTPA count that failed to satisfy the cigarette rule). As set forth above, Safeguard was not maintaining the Premises at the time of the damage and it was not foreseeable that Safeguard would engage in any misconduct. Therefore, any claims as to Safeguard have been disproven as a matter of law. Turning to claims that Safeguard and/or JPMC continued to attempt to change the locks after Hashem was released from prison, Hashem's testimony establishes that individuals did appear to the Premises to preserve the property and/or change the locks but they immediately left upon finding the Premises occupied. Local R. 56(a)(1) Statement at 51-52. This does not establish unfair, immoral, unethical, oppressive or unscrupulous conduct against public policy.

As to the purported substantial injury, the Plaintiffs have shown no damage as a result of the two acts of misconduct JPMC allegedly engaged in. The hiring of Safeguard, even if improper, caused no additional damage to the Plaintiffs because the damage to the Premises had already occurred in 2011 while LPS was assigned to the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

job. Furthermore, the alleged visits by JPMC following Hashem's release from prison did not harm the Plaintiffs. Hashem simply confronted the workers and they immediately left the Premises upon realizing that it was occupied. In the absence of a demonstration that JPMC's purported conduct caused "substantial injury" to the Plaintiffs, this count fails to assert a claim upon which relief can be granted. *See Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 592 (1995) (finding that the third prong as to "substantial injury" requires that the injury be substantial, must not be outweighed by countervailing benefits to the consumers that the practice produces, and it must be an injury that consumers could not reasonably have avoided). For this reason as well, judgment should enter in JPMC's favor as to Count XV and the accompanying prayer for relief.

m. **The Plaintiffs Have Similarly Presented No Evidence Of Abusive, Harassing, Deceptive Or Misleading Debt Collection Practices**

In Count X, the Plaintiffs further allege that JPMC has engaged in unfair debt collection practices by initially taking possession of the Premises and later seeking to declare the Premises abandoned after Hashem resumed full-time occupancy. In much the same manner, the Plaintiffs' testimony, as detailed above, does not support either such claim. From the outset, the allegedly improper hiring of Safeguard cannot form the basis for this claim because Safeguard was not providing preservation services at the time of the damage to the Premises in 2011. Furthermore, the two alleged visits by JPMC following Hashem's release from prison did not harm the Plaintiffs. Hashem simply confronted the workers and they immediately left the Premises upon realizing that it was occupied. This alleged conduct was not abusive, harassing, deceptive or misleading or an attempt to collect a debt and the number of contacts does not present

One Goodwin Square          HALLORAN          Phone (860) 522-6103
225 Asylum Street          &SAGE LLP          Fax (860) 548-0006
Hartford, CT 06103                              Juris No. 26105

"the indicia of a campaign of harassment or abusive behavior". *Claude v. Wells Fargo Home Mortg.*, 2014 WL 4073215, *7 (D.Conn. Aug. 14, 2014) (Bryant, J.) (dismissing unfair debt collection claim) (citations omitted). Instead, it was a straightforward attempt to preserve the Premises to protect both JPMC and the Plaintiffs' interest and determine if the Premises was in fact occupied following an extended period of vacancy. Local R. 56(a)(1) Statement at 51. Given the prior events and extensive damage, JPMC would have been remiss to not take efforts to confirm the occupancy of the Premises before discontinuing preservation services. *Id.* at 54. Accordingly, judgment as a matter of law should enter as to Count X and the accompanying prayer for relief.

## IV.   CONCLUSION

For all the foregoing reasons, the defendant, JPMorgan Chase Bank, N.A., respectfully moves for the entry of judgment as a matter of law in its favor as to all counts of the Plaintiffs' Complaint.

> DEFENDANT,
> JPMORGAN CHASE BANK, N.A.
>
> By___*/s/Meg R. Reid*_____
> Brian D. Rich
> Fed. Bar No. ct24458
> Meg Reid
> Federal Bar No. ct28338
> HALLORAN & SAGE LLP
> 225 Asylum Street
> Hartford, Connecticut 06103
> Tel:    860-522-6103
> Fax:    860-548-0006
> rich@halloransage.com
> reid@halloransage.com

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## CERTIFICATE OF SERVICE

This is to certify that on this 3rd day of November 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/Meg R. Reid*
Meg Reid

3541578v1

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105