## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ABU HASHEM W.Q. MALICK | : | |
| AND SHUJAAT Q. MALICK, | : | |
|     Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:13-cv-00669 (VLB) |
| | : | |
| | : | September 29, 2015 |
| J.P. MORGAN CHASE BANK, N.A. | : | |
| AND SAFEGUARD | : | |
| PROPERTIES, LLC, | : | |
|     Defendants. | : | |

### MEMORANDUM OF DECISION GRANTING AND DENYING, IN PART, DEFENDANT J.P. MORGAN CHASE BANK, N.A.'S [Dkt. #49] MOTION TO DISMISS

Plaintiffs, Abu Hashem W.Q. Malick ("A. Malick") and Shujaat Q. Malick ("S. Malick"), bring federal constitutional and state law claims against Defendants, J.P. Morgan Chase Bank, N.A. ("JPMC") and Safeguard Properties, Inc. ("Safeguard") arising from the Defendants' taking possession of and causing damage to Plaintiffs' real and personal property.

Currently before the Court is Defendant JPMC's motion to dismiss Counts I, VI, VIII, XIII, XIV and XV of the Plaintiffs' Second Amended Complaint. [Dkt. #49, Def.'s Mot. to Dismiss at 1]. For the reasons that follow, the motion is GRANTED, in part, and DENIED, in part.

## I. Factual Background

A. Malick resides at 4405 Black Rock Turnpike, Fairfield, CT 06824-7832 ("the Premises"). [Dkt. #48, Second Am. Compl. at ¶ 1]. A. Malick purchased and became record title holder of the Premises on January 8, 2007. [Id. at ¶¶ 1, 5]. S. Malick contributed money to A. Malick's purchase of the Premises, and on

February 15, 2007, A. Malick "granted a mortgage on the Premises to S. Malick."
[*Id.* at ¶ 6].  The complaint does not allege that S. Malick recorded his mortgage
on the land records.  On or about June 30, 2007, A. Malick took out a home
improvement loan from Washington Mutual Savings Bank ("WAMU") for $417,000,
and gave WAMU a mortgage on the Premises to secure repayment of the loan.[1]
[*Id.* at ¶ 7].  A. Malick used a portion of this loan to make "partial re-payment" to
S. Malick.  [*Id.* at ¶ 8].

By August 2008, A. Malick was "a couple of months" behind on his monthly
loan payments to WAMU.  [*Id.* at ¶ 12].  A few months later, on November 24, 2008,
he was detained on a charge of violation of probation; and on January 22, 2009,
he was found in violation and sentenced to a term of incarceration.  [*Id.* at ¶ 13].
On May 25, 2012, he was released from prison pending an appeal.  [*Id.* at ¶ 14].
Accordingly, A. Malick was not residing at the Premises for approximately three-
and-a-half years, during which it was unoccupied.

At the time A. Malick left the Premises, the house contained many of his
personal belongings, including furniture, kitchenware, various professional,
gardening, and other equipment, and a suitcase containing his deceased son's
belongings and personal relics.  [*Id.* at ¶¶ 15, 22].  While A. Malick was in prison,
S. Malick regularly monitored the Premises by, among other things, ensuring that
electricity was maintained on the Premises and that mail was collected.  [*Id.* at ¶
15].  Therefore, although unoccupied, Plaintiffs contend that the Premises never
appeared vacant or abandoned.  [*Id.*].

---

[1] WAMU went bankrupt in August, 2008, and its assets, including the loan at issue
here, were assumed by Defendant JPMC.  [*Id.* at ¶ 11].

During one of S. Malick's regular visits to the Premises, he noticed that all three entrance locks to the home had been changed.   [*Id.* at ¶ 16].  S. Malick confirmed that foreclosure proceedings had not commenced, and then replaced the locks.  [*Id.*].  On a second occasion, a few months later, the locks were again changed and S. Malick found a note stating that JPMC had taken over the Premises.  [*Id.* at ¶ 17].  Upon calling JPMC, S. Malick learned that Defendant Safeguard, JPMC's property management liability company, changed the locks and winterized the home.  [*Id.* at ¶¶ 4, 17].[2]  S. Malick again replaced the locks. [*Id.*]  S. Malick returned a third time, and discovered that the locks had again been changed.  [*Id.* at ¶ 18].  In response, S. Malick called the Fairfield Police Department who assisted S. Malick in entering the house.  [*Id.*]

Upon entering the home, S. Malick and the police found that most of A. Malick's personal property was missing, that the interior of the home, including the walls, windows, and ceilings, were destroyed, and many fixtures, such as the heating and water pipes and hot water radiators had been removed.  [*Id.* at ¶ 18]. Among the personal property missing from the home was the suitcase containing A. Malick's deceased son's belongings.  [*Id.* at ¶¶ 22-23].  Fairfield police took photos of the damage and prepared an investigative report.  [*Id.* at ¶ 18].

The numerous difficulties S. Malick encountered in accessing the home caused him to scale back his monitoring efforts to "an occasional exterior visit." [Dkt. #48, Ex. 1 to Second Am. Compl. at 1].  As a result, the condition of the

---

[2] Plaintiff contends that Safeguard has a "history of taking over properties while they are neither abandoned nor vacant, employing aggressive and invasive tactics."  [Dkt. #48, Second Am. Compl. at ¶ 28].

Premises continued to decay, as "two-to-three-foot-high grass and wild weeds" grew throughout the property.  [Dkt. #48, Second Am. Compl. at ¶ 30].

On May 25, 2012, upon leaving prison, A. Malick returned to the Premises and found that the entrance locks had been changed again, forcing him to enter the home through a broken window.  [*Id.* at ¶ 19].  On August 17, 2012, while residing at the Premises, A. Malick found a small sticker posted to the entrance door.  [*Id.* at ¶ 21; Dkt. #48, Ex. 1 to Second Am. Compl. at 1].   The sticker stated "vacant or abandoned property," and included a phone number.  [*Id.*].  Three days later, on August 20, 2012, A. Malick called the number, which belonged to Safeguard, and discovered that JPMC was attempting, again, to take over the Premises.  [*Id.*].  During the call, A. Malick told the Safeguard employee with whom he spoke that he was living in the home, it was neither vacant nor abandoned, and that he had placed "five highly visible" notices on the windows and doors, which stated "PRIVATE PROPERTY' and 'NO TRESPASSING'" and included A. Malick's phone number.  [Dkt. #48, Ex. 1 to Second Am. Compl. at 1].

On August 29, 2012, A. Malick sent Safeguard a formal letter reiterating that he was a "full time resident" of the Premises and describing the damage to the property, along with the personal items taken from the Premises while under Safeguard's watch.  [*Id.*].  The letter explained that the Premises was located in a "non-walk type" neighborhood, stated that it was "hard to believe" that the damage was caused by "someone just stopping his car or truck to enter the house" since the "damage and loss []had to take several visits and several days," and alleged that at the time the damage and theft occurred, "[t]he only people

who knew [the] house was . . . unoccupied, were your employees or contractors."
[*Id.*].  Safeguard did not respond to A. Malick's letter.  Moreover, a few months
later, Safeguard again posted a "vacant abandoned" sticker on the entrance door
to the Premises.  [Dkt. #48, Second Am. Compl. at ¶ 24].

On or around August 31, 2012, A. Malick received a letter from JPMC informing
him that the Premises was "in active foreclosure."  [Dkt. #48, Ex. 4 to Second Am.
Compl. at 1].  On September 20, 2012, A. Malick sent a letter to JPMC informing it
of the damage done to the Premises.  [Dkt. #48, Ex. 5 to Second Am. Compl. at 1].
JPMC never provided a substantive response to this letter.  [Dkt. #48, Second Am.
Compl. at ¶ 25].  It also did not cease its efforts to assume possession of the
Premises.  [*Id.* at ¶¶ 26, 30].  The Complaint does not state that the WAMU
mortgage was paid during the time the Premises were unoccupied.

II.    Standard of Review

A.    Fed. R. Civ. P. 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient
factual matter, accepted as true, to state a claim to relief that is plausible on its
face." *Sarmiento v. U.S.*, 678 F.3d 147, 152 (2d Cir. 2012)(quoting *Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual
allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic
recitation of the elements of a cause of action will not do.'  Nor does a complaint
suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"
*Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  "Where a complaint pleads
facts that are 'merely consistent with' a defendant's liability, it stops short of the

line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  However, the Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

**B.  Standing**

"Where, as here, jurisdiction is predicated on diversity of citizenship, a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action."  *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005).

"There are three Article III standing requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision."  *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009)

(citation and quotation omitted).  "The keystone for determining injury in fact is the requirement that it be distinct and palpable—and, conversely, that it not be 'abstract' or 'conjectural' or 'hypothetical.'"  *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 330 (2d Cir. 1997) (citations and quotation omitted).  In addition, the injury must "affect[] the plaintiff in a personal and individual way to confirm that the plaintiff has a personal stake in the controversy . . . ."  *Bauer v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003).  However, "[a]t the motion to dismiss stage, it may suffice for a plaintiff to set forth 'general allegations of injury resulting from the defendant's conduct.'"  *Granger Constr. Co., Inc. v. G.C. Fire Prot. Sys., Inc.*, No. 5:13-cv-0780 (LEK/ATB), 2014 WL 202020, at *3 (N.D.N.Y. Jan. 15, 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Where a party claims standing on the basis of damage to real property, assertion of an ownership interest in the property is sufficient to establish Article III standing.  *See Stokes v. Village of Wurtsboro*, 818 F.2d 4, 6 (2d Cir. 1987) (finding that allegations of property ownership afforded owners "standing to assert a claim for damages").  Such interest may be expressed in the form of "title to the disputed property" or as a holder of a mortgage on the property. *Levitin v. Miller*, No. 92 Civ. 0520 (KMW), 1992 WL 321914, at *2 (S.D.N.Y. Oct. 28, 1992).

Similarly, under Connecticut law, "[s]tanding requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury [that he or she has suffered or is likely to suffer]."  *Wilcox v. Webster Ins., Inc.*, 294 Conn. 206, 214, 982 A.2d 1053, 1061 (Conn. 2009).

"Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved." *Id*. "The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action] . . . Second, the party claiming aggrievement must successfully establish that this specific personal legal interest has been specially and injuriously affected by the [challenged action]." *Id*.

III.    Analysis

A.    S. Malick has Standing to Bring a Claim Against JPMC

The Second Amended Complaint alleges that S. Malick suffered damages as a result of JPMC's conduct, and brings federal and state claims on his behalf. [Dkt. #48, Second Am. Compl. at ¶¶ 34-38, 43-48].  JPMC contends that S. Malick's claims should be dismissed entirely because "there is no claim that the purchase of the Premises was for the benefit of [S. Malick]."  [Dkt. #49, Def. Motion to Dismiss at 1].  Defendant JPMC is mistaken.

The Second Amended Complaint alleges that in exchange for contributing money to A. Malick's purchase of the Premises, A. Malick "granted a mortgage on the Premises to S. Malick" on February 15, 2007.  [Dkt. #48, Second Am. Compl. at ¶ 6]. The Complaint further contends that A. Malick made a" partial re-payment" to S. Malick.   [*Id*. at ¶ 8].  These allegations may fairly be construed to allege that S. Malick loaned A. Malick money to purchase the Premises, in consideration for which S. Malick received a mortgage on the Premises. A purchase money

mortgage is sufficient to give S. Malick standing under Connecticut law. *See, e.g.,*

*Mortg. Elec. Registration Sys., Inc. v. White*, 278 Conn. 219, 231, 896 A.2d 797, 806

(Conn. 2006) (stating that "on the execution of a mortgage on real property, the

mortgagee holds legal title and the mortgagor holds equitable title to the

property"). Accordingly, the allegations concerning S. Malick's mortgage interest

are sufficient at the motion to dismiss stage to establish standing under Article III

and Connecticut law. *See Granger*, 2014 WL 202020, at *3; *Maloney v. Pac*, 183

Conn. 313, 321, 439 A.2d 349, 354 (Conn. 1981) (plaintiff need only assert facts

showing a "personal stake in the outcome of the controversy") (citations and

quotation omitted).[3] Accordingly, the motion to dismiss S. Malick's claims for

lack of standing is DENIED.

**B.    Count I States a Claim for Conversion of A. Malick's Personal Property**

Conversion is the "unauthorized assumption and exercise of the right of

ownership over goods belonging to another, to the exclusion of the owner's

rights." *Aetna Life & Cas. Co. v. Union Trust Co.*, 230 Conn. 779, 790, 646 A.2d

799, 804 (Conn. 1994) (citations omitted). To set forth a prima facie claim of

conversion, a plaintiff must allege: "(1) the material at issue belonged to the

[plaintiff], (2) that [the defendant's act] deprived the [plaintiff] of that material for

---

[3] However, the Court notes that S. Malick's interest in the Premises is, at best,
murky. In addition to describing S. Malick as a mortgagee, who holds legal title
to the Premises, the Complaint also characterizes him as "an equitable owner,"
who does not. [Dkt. #48, Second Am. Compl. at ¶ 6]. *See Southport
Congregational Church--United Church of Christ v. Hadley*, 152 Conn. App. 282,
297-98 (Conn. App. Ct. 2014) ("'An equitable title is a right possessed by a
person to have the legal title to property transferred to him upon the
performance of specified conditions . . . .'") (quoting *Francini v. Farmington*, 557
F.Supp. 151, 155 (D.Conn.1982)).

an indefinite period of time, (3) that [the defendant's] conduct was unauthorized and (4) that [the defendant's] conduct harmed the [plaintiff]." *News America Marketing In–Store, Inc. v. Marquis*, 86 Conn. App. 527, 545, 862 A.2d 837, 848 (Conn. App. 2004).

The Complaint asserts conversion of both Plaintiffs' real property and A. Malick's personal property. [Dkt. #48, Second Am. Compl. at ¶ 34]. Specifically, Plaintiffs allege that JPMC wrongfully assumed and exercised control over the Premises multiple times by changing the locks to the home, rendering it and the personal property held inside, inaccessible to Plaintiffs. [*Id.* at ¶¶ 16-18, 34; Dkt. #48, Ex. 1 to Second Am. Compl. at 1]. In addition, the Complaint alleges that the Defendants played some role in A. Malick's permanent loss of his personal property from inside the home. [Dkt. #48, Second Am. Compl. at ¶¶ 34, 39; Dkt. #48, Ex. 1 to Second Am. Compl. at 1].

Generally, "'[w]rongful conversion' can apply only to personal property." *Hartlin v. Cody*, 144 Conn. 499, 508, 134 A.2d 245, 249 (Conn. 1957); *see also Barretta v. Barretta*, No. CV 095009664S, 2011 WL 4031197, at *4 (Conn. Super. Ct. Aug. 18, 2011) (striking conversion claim where plaintiffs claimed they "were deprived of the use of [real] property"). However, Connecticut does recognize conversion of personal property consisting of a contractual right to an ownership interest in real property. *See Zanker Grp. v. Summerville at Litchfield Hills, LLC*, No. CV 044010223S, 2006 WL 2130382, at **4-6 (Conn. Super. Ct. Jul. 18, 2006) (concluding that an option to purchase real property contained in a lease document could be the subject of a conversion claim); *see also Salce v. Wolczek,*

314 Conn. 675, 700, 104 A.3d 694, 685 (Conn. 2014) (discussing doctrine of equitable conversion).  Regardless, this limited exception is not applicable in this case, because neither Plaintiff alleges that he was deprived of his contractual mortgage interest in the Premises.  Indeed, nowhere does the Complaint allege that the Defendants converted a right belonging to either of the Plaintiffs set forth in any document.  From the allegations of the Complaint, there can be no "dispute that the subject of [Plaintiffs'] conversion claim is the [Premises]" itself, in addition to the personal property belonging to A. Malick. *Barretta*, 2011 WL 4031197, at *6 (dismissing conversion claim).

Defendant JPMC's contention that "there is nothing to suggest that JPMC had the intent to do the act complained of, the deprivation of [A. Malick]'s personal property," [Dkt. #50, Def.'s Memo. at 12], is both inaccurate and irrelevant.  *See* [Dkt. #48, Second Am. Compl. at ¶ 39 ("Defendant [JPMC] knowingly seized personal property without lawful authority . . . .")]; *Plikus v. Plikus*, 26 Conn. App. 174, 180, 599 A.2d 392, 395 (Conn. App. 1991) ("The intent required for a conversion is merely an intent to exercise dominion or control over an item even if one reasonably believes that the item is one's own.").  The Complaint clearly pleads that Defendant JPMC intended to and did exercise dominion or control over the entire Premises, including A. Malick's personal property, and that this exercise of control caused damage to and loss of this property.

Accordingly, Defendant JPMC s motion as to Count I is GRANTED in part and DENIED in part.  For the reasons stated, A. Malick's claim for conversion of

his personal property from the Premises survives the Motion to Dismiss.

C.     <u>Count VI States a Valid Claim for Civil Theft</u>

Plaintiffs bring a claim for civil theft against Defendant JPMC.  "The elements of civil theft are [] largely the same as the elements to prove the tort of conversion, but theft requires a plaintiff to prove the additional element of intent over and above what he or she must demonstrate to prove conversion."  *Sullivan v. Delisa*, 101 Conn. App. 605, 619-20, 923 A.2d 760, 771 (Conn. App. 2007).  Specifically, "statutory theft requires an intent to deprive another of his property . . . ."  *Howard v. MacDonald*, 270 Conn. 111, 129, 851 A.2d 1142, 1152 n.8 (Conn. 2004).  For the reasons stated above, the Complaint pleads sufficient facts to support a conversion claim, and also alleges that "Defendant [JPMC] knowingly seized personal property without lawful authority."  [Dkt. #48, Second Am. Compl. at ¶ 39].  It therefore states a claim for civil theft.  Accordingly, Defendant's motion to dismiss Count VI is DENIED as to A. Malick's claim of theft of his personal property.

D.     <u>Count VIII Fails to State a Claim for Infliction of Emotional Distress</u>

Plaintiffs contend that "by obtaining possession of [A. Malick's] suitcase," which contained his deceased son's last possessions, Defendant JPMC inflicted upon A. Malick severe emotional distress.  [Dkt. #48, Second Am. Compl. at ¶ 41].

i.     <u>Negligent Infliction of Emotional Distress</u>

Plaintiffs' negligent infliction claim fails utterly, because "Connecticut has not recognized claims for negligent infliction of emotional distress arising out of situations resulting in property damage alone."  *Fasano v. Caprio*, No. CV 106014443S, 2011 WL 3199365, at *3 (Conn. Super. Ct. Jun. 28, 2011).  This is the

**12**

case even where the personal property removed includes "mementos, family photographs and a jar containing [] cremated remains" of close relatives. *Goldstein v. Rapp*, No. CV 104010224, 2010 WL 4353474, at *1 (Conn. Super. Ct. Oct. 15, 2010).

    ii.   <u>Intentional Infliction of Emotional Distress</u>

To support a claim for intentional infliction of emotional distress a plaintiff must allege: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210, 757 A.2d 1059, 1062 (Conn. 2000).

The Complaint fails to state a claim of intentional infliction for at least two reasons. First, as is the case with negligent infliction claims, multiple courts have held that "intentional destruction of personal property, without more, is not 'extreme and outrageous' conduct as a matter of law." *Caulkins v. Meade*, No. CV 000340513, 2001 WL 1376217, at *3 (Conn. Super. Ct. Oct. 17, 2001); *DeLeo v. Reed*, No. CV 990172435, 2000 WL 38451, at **1-2 (Conn. Super. Ct. Jan. 3, 2000); *Hixon v. Eilers*, No. CV 990592937S, 2001 WL 219889, at **3-4 (Conn. Super. Ct. Feb. 14, 2001). Second, Plaintiffs do not allege that Defendant JPMC was ever aware that A. Malick's missing suitcase contained his deceased son's personal effects. Absent this knowledge, Defendant JPMC could not have intended,

known, or should have known that taking the suitcase would produce emotional distress.

    Accordingly, Defendant's motion to dismiss Count VIII is GRANTED.

**E.**    <u>Count XIV Fails to State Constitutional Claims</u>

    The Second Amended Complaint brings federal and state constitutional claims arising from "unreasonable search[] and seizures" and deprivation of property without due process of law.  [Dkt. #48, Second Am. Compl. at ¶ 47]. None of these claims are valid.

    Plaintiffs' federal constitutional claims, pursuant to the Fourth and Fifth Amendments via 42 U.S.C. § 1983, fail because nowhere do Plaintiffs allege facts showing that Defendant JPMC acted under color of state law.  *See Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) ("A plaintiff pressing a violation of his constitutional rights under §1983 is . . . required to show state action.").  Indeed, the only state actor mentioned in the paragraphs cited by Plaintiffs is the "Fairfield Police Department" who assisted *Plaintiff S. Malick* in accessing the Premises, after he was again locked out, and documenting the damage done to the home.  [Dkt. #48, Second Am. Compl. at ¶ 18].  Plaintiffs simply do not allege that Defendant JPMC "acted in concert with [a] state actor to commit an unconstitutional act." *Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014) (citations and quotations omitted).

    The lack of any government actor similarly forecloses Plaintiff's state law constitutional claims.  *See Binette v. Sabo*, 244 Conn. 23, 35, 710 A.2d 688, 694 (Conn.1998) (holding that only private cause of action under article first, § 7 is a *Bivens*-like claim); *see also Alexander v. Vernon*, No. CV 020078935S, 2004 WL

1098773 at *4 (Conn. Super. Ct. May 3, 2004) (dismissing constitutional common-law claim because "there is no constitutional provision which addresses the assaulting or killing of one private citizen by another *private* citizen . . . [A] direct constitutional common-law claim may lie, if the *Bivens* criteria are met, against agents of the government . . . .") (emphasis in original).

Finally, any claim brought pursuant to Connecticut General Statute § 46a-58 must be dismissed because that statute does not confer a private cause of action. *Garcia v. Saint Mary's Hosp.*, 46 F. Supp. 2d 140, 142 (D. Conn. 1999).

Accordingly, Defendant's motion to dismiss Count XIV is GRANTED.

**F.    Count XV States a CUTPA Claim**

Defendant JPMC challenges Plaintiffs' CUTPA claim on the grounds that Plaintiffs failed to plead: (i) conduct sufficient to satisfy the "cigarette rule"; (ii) JPMC's conduct caused the damage to Plaintiffs' property; and (iii) with sufficient particularity.  None of these arguments succeed.

"[T]o prevail on a CUTPA claim, the plaintiffs must prove that (1) the defendant engaged in unfair or deceptive acts or practices in the conduct of any trade or commerce ... and [that the] [plaintiff suffered] ascertainable loss of money or property as a result of the defendant's acts or practices." *Neighborhood Builders, Inc. v. Town of Madison*, 294 Conn. 651, 657, 986 A.2d 278, 282 (Conn. 2010) (quoting Conn. Gen. Stat. § 42–110b(a); Conn. Gen. Stat. § 42–110g(a)).

To allege that the defendant engaged in "unfair or deceptive acts," it is necessary to allege one or more of the prongs of the "cigarette rule": "(1)

[W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or…is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businessmen]." *Journal Publishing Co., Inc. v. Hartford Courant Co.*, 261 Conn. 673, 695, 804 A.2d 823, 839 (Conn. 2002). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id at 695-696.*[4]

The Court finds that the Second Amended Complaint pleads conduct sufficient to satisfy the "cigarette rule," as Plaintiffs allege that Defendant JPMC assumed dominion and control over the Premises and Plaintiffs' personal property without authority, failed to respond to any of S. Malick's letters informing them that the Premises was not abandoned, and refused to relinquish dominion and control over the Premises despite Plaintiffs repeated requests that it do so.  Such conduct is pleaded with particularity and is oppressive, immoral,

---

[4] Defendant JPMC asserts that "a claim under CUTPA must be pled with particularity to allow for evaluation of the legal theory upon which the claim is based."  [Dkt. #50, Def.'s Mot. to Dismiss at 22].  While "Connecticut courts have required CUTPA claims to be pled with particularity," absent allegations of fraud, "this procedural requirement does not apply in federal court."  *U.S. ex rel. Polied Envtl Servs., Inc. v. Incor Grp., Inc.*, 238 F. Supp. 2d 456, 463 (D. Conn. 2002); *see also In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 120 (D. Conn. 2014) ("Plaintiffs [] must only comply with the pleading requirements of [Federal] Rule 8(a) when not alleging fraud as the basis for their CUTPA claim."). Since Plaintiffs' CUTPA claim is not based on fraud, they need not plead this claim with heightened particularity.  *See* [Dkt. #48, Second Am. Compl. at ¶ 48].

unscrupulous, and offensive to public policy.  Accordingly, Defendant's motion to dismiss Count XV is DENIED.[5]

IV.    <u>Conclusion</u>

For the foregoing reasons, the Court GRANTS JPMC's Motion to Dismiss in part, as to Count I, and in whole, as to Counts VIII and XIV.  As to the remaining counts, Defendant's motion is DENIED.

IT IS SO ORDERED, ADJUDGED AND DECREED, this 29th day of September 2015, Hartford, Connecticut

_____/s/_____
Vanessa L. Bryant,
United States District Judge

---

[5] In addition, Defendant JPMC claims, but does not explain why, Count XIII, which brings a negligence claim based on the hiring of Defendant Safeguard to manage the Premises, fails to state a claim.  *See* [Dkt. #50, Def.'s Mot. to Dismiss at 1; Dkt. #48, Second Am. Compl. at ¶ 46].  Any deficiencies in pleading this Count are not apparent on the face of the Complaint.  Accordingly, Defendant's motion to dismiss Count XIII is DENIED.