UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ABU HASHEM W.Q. MALICK, ET AL. | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION |
| | ) NO. 3:13-cv-00669-VLB |
| VS. | ) |
| | ) |
| JPMORGAN CHASE BANK, N.A., ET AL. | ) |
| | |
| Defendants. | ) OCTOBER 13, 2015 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO THE COURT'S SEPTEMBER 30, 2015 MEMORANDUM OF DECISION

Pursuant to Federal Rule of Civil Procedure 56, the Defendant, JPMorgan Chase Bank, N.A., ("JPMC" or "Defendant"), hereby submits this Memorandum of Law in Support of its Motion for Summary Judgment Pursuant to the Court's (Bryant, J.) September 30, 2015 Memorandum of Decision, seeking dismissal of Counts I (conversion), V (negligence), X (Connecticut Creditors Collection Practices Act), XI (negligence) and XV (CUTPA) of the Plaintiffs' August 13, 2014-dated Second Amended Complaint (the "Complaint").[1] (Doc. # 48). In further support of this motion, JPMC incorporates by reference its original Motion for Summary Judgment and Memorandum of Law in Support of Motion for Summary Judgment. JPMC further submits a Local Rule 56(a)(1) Statement of Undisputed Facts and accompanying exhibits. For the reasons that follow, JPMC is entitled to judgment as a matter of law.

---

[1] These are the only counts remaining following the Court's (Bryant, J.) dismissal of various counts in response to JPMC's motions for summary judgment and to dismiss. See Memo. of Decision (Sept. 30, 2015)(Doc. # 67); see also Memo. of Decision (Sept. 29, 2015) (Doc. # 66).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## I. UNDISPUTED FACTS

In the interest of brevity, JPMC incorporates by reference the Undisputed Facts, as set forth in the Memorandum of Law in Support of Motion for Summary and only offers additional facts to the extent necessary and appropriate.

### A. The Loan Documents

On June 26, 2007, Hashem executed a delivered a Note in the original principal amount of $417,000.00 to Washington Mutual Bank, FA. *See* Local R. 56(a)(1) Statement at 62. As security for the payment and satisfaction of the Note, Hashem executed and delivered to Washington Mutual Bank, FA, a certain Mortgage Deed, dated June 29, 2007 (the "Mortgage"), by which he granted to Washington Mutual Bank, FA, a mortgage encumbering his interest in the property known as 4405 Black Rock Turnpike in Fairfield, Connecticut (the 'Property"). *Id.* at 63. JPMC's business records reflect that the Mortgage was recorded in Volume 3991 at Page 134 in the Fairfield Land Records. *Id.* JPMC acquired this loan from the FDIC. *Id.* at 64. Hashem has not made a payment since 2008. *Id.* at 65.

The Mortgage provides, in pertinent part, as follows:

> 7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. . . . Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

inspection specifying such reasonable cause.

\* \* \*

> 9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Proeprty and rights under the Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. . . . Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9. . . .

Local R. 56(a)1 Statement at 63.

## II. ARGUMENT

### A. Standard For Summary Judgment

Summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party has the burden of showing that no genuine issue of material fact exists, and all reasonable inferences must be drawn in favor of the nonmoving party. *Jacobs Vehicle Sys., Inc. v. Pac. Diesel Brake Co.*, 424 F. Supp.2d 388, 391 (D. Conn. 2006) (citation omitted).

Once the moving party has demonstrated the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and point to evidence in the record showing that there is a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The nonmoving party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. *Id.* (citing *Knight v. U.S. Fire Ins.*

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Co., 804 F.2d 9, 12 (2d Cir. 1986)). While the nonmoving party's evidence must be accepted as true, and the nonmoving party must be given the benefit of all reasonable inferences, if the evidence in the record, viewed in this manner, would be insufficient to support a jury verdict for the nonmoving party, summary judgment may be granted to save the parties and the public the expense of an unwarranted trial. *Knox v. City of New Haven*, 357 F. Supp. 2d 449, 451-452 (D. Conn. 2005) (citations omitted); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505 (1986) (stating that the "mere existence of a scintilla of evidence in support of the [non-movant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the non-movant).

### B. Although Hashem Was And Remains In Violation Of His Contractual Obligations, JPMC Was Within Its Contractual Rights

From 2008 to the present, no mortgage payments have been made. Local R. 56(a)(1) Statement at 5. Hashem claims that the reason he has not made any mortgage payments since 2008 was because of his incarceration. *Id.* at 5 and 65. He also did not ask Shujaat to make mortgage payments while he was incarcerated. *Id.* at 17. Having failed to make payments since before his incarceration, Hashem was and remains in default of his contractual obligations under the Mortgage and Note.

Hashem is further under an obligation to "not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property." Local R. 56(a)1 Statement at 63. He had an obligation, by contract, to "maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition." *Id.* Despite these contractual obligations under the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Mortgage, Hashem failed to institute any precautions to protect or maintain the Premises while incarcerated. *Id.* at 13-14. As a result of Hashem's failure to fulfil his contractual obligations, JPMC was authorized, although not obligated, under the terms of the Mortgage to preserve the Premises, as set forth below.

### C.  JPMC Did Not Owe A Standard Or Duty Of Care

As a matter of law, a negligence action clearly cannot lie against a defendant who owes no duty to a party who claims to be injured. See *Gordon v. Bridgeport Housing Auth.*, 208 Conn. 161,170-71 (1988); see also *Shore v. Stonington*, 187 Conn. 147 (1982). "To prove negligence, it is necessary to prove that a duty existed, that the duty was breached and that the breach of duty was the proximate cause of the victim's injury." *Caron v. Adams*, 33 Conn. App. 673, 689 (1994). The burden of proof in this regard lies with the plaintiff. *Schiavone v. Falango*, 149 Conn. 293, 296 (1962).

"Generally there exists <u>no</u> fiduciary relationship merely by virtue of a borrower-lender relationship between a bank and its customer." *Southbridge Assoc., LLC v. Garofalo*, 53 Conn.App. 11, 19 (1999) (emphasis added). In the case of two parties to a contract, absent a duty beyond and independent of the contract, a party cannot prevail on a claim of negligence. *Gonzalez v. Allstate Ins. Co.*, 2007 WL 586971, *3 (Feb. 1, 2007) (citing *Macomber v. Travelers Property & Cas. Corp.*, 261 Conn. 620, 641 (2002)); *Leonardo v. Ultimate Brands, Inc.*, 2009 WL 3644683, *2 (Sept. 18, 2009) (Holden, J.) (finding duty element not met).

Here, there is no legal basis to find JPMC owed a standard of care with respect to maintenance of the Premises. The nature of the relationship between a

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

lender and a borrower is contractual in nature and does not, in this case, give rise to fiduciary duty. *Southbridge Assoc*, 53 Conn.App. at 19; *see also Gonzalez*, 2007 WL 586971, *3 (finding "[t]he insurer, therefore, does not owe a fiduciary duty to its insured"). As the lender, JPMC had no common law obligation to save and protect the Premises or otherwise.

Furthermore, the parties, by agreement, have established that JPMC is not under any duty although it has the right to elect to maintain the Premises. While the Mortgage permits JPMC to make reasonable entries and inspections on the Property and/or to protect the Premises, JPMC has no obligation to do so. "Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9." Local R. 56(a)1 Statement at 63. In this way, Hashem and JPMC, by contract, expressly agreed that JPMC had no duty or obligation to act in preservation of the Premises and did not incur any liability through JPMC's actions or inaction. Accordingly, JPMC had no standard of care with respect to the Premises.

### E. JPMC Did Not Breach Any Such Standard Of Care

Even if this Court finds that JPMC had a standard of care, there is no evidence to suggest that JPMC breached any such standard of care. At worst, JPMC hired a preservation company to take all reasonable steps to save and protect the Premises when it discovered, unilaterally, that the Premises was abandoned and/or not being maintained. The Plaintiff fails to offer any

- 6 -

One Goodwin Square
225 Asylum Street
Harrford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

admissible evidence to indicate that any applicable standard of care was breached.

### F. Even If JPMC Breached Its Standard Of Care, That Breach Was Not The Actual Or Proximate Cause Of The Plaintiff's Alleged Damages

JPMC's conduct, in seeking to preserve the property, was not the actual or proximate cause of Hashem's alleged damages caused by vandalism and/or theft. The concept of legal causation is a hybrid comprised of both actual causation and proximate cause. *See DeOliveira v. PMG Land Assoc.*, 105 Conn. App. 369, 377 (2008). With regard to actual causation, the plaintiff must demonstrate, without resort to conjecture, that the alleged injury would not have occurred "but for" the defendant's alleged negligence. *See Alexander v. Town of Vernon*, 101 Conn. App. 477, 489 (2007) (finding based upon the speculative nature of the facts presented, the plaintiff could not satisfy his burden as to actual cause). Although actual causation is fact sensitive, a lack of evidence that the defendant's "negligent omission was a 'but for' cause of the resultant harm" is fatal to a negligence claim. *Id.*; *see also Medcalf v. Washington Heights Condominium Assn., Inc.*, 57 Conn. App. 12, 18 (2000) ("The injury may likely have occurred without any negligence with respect to the intercom.").

As to proximate cause, the fundamental inquiry "is whether the harm that occurred was within the scope of foreseeable risk created by the defendant's negligent conduct." *DeOliveira*, 105 Conn. App. at 377 (citations omitted). In essence, "the test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the [victim's] injuries." Moreover, the "existence of the proximate cause of an injury is determined by looking from the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

injury to the negligent act complained of for the necessary causal connection . . . . This causal connection must be <u>based upon more than conjecture and surmise</u>." *DeOliveira*, 105 Conn. App. at 377-78 (affirming entry of summary judgment in defendant's favor) (emphasis in original; citations omitted); see also *Paige*, 250 Conn. at 24 (finding insufficient evidence of a causal connection between the defendant's conduct and the plaintiff's injuries and, therefore, any inference would be based on nothing more than speculation and could not form the basis of the verdict in plaintiff's favor).

Here, there is nothing to establish or suggest that the vandalism and/or theft would not have occurred "but for" JPMC's attempts to preserve the Premises. Likewise, it is not foreseeable that the Premises would be broken into and vandalized by JPMC's attempts to preserve the Premises which included yard maintenance. To the contrary, it is quite foreseeable that vandalism and theft would have occurred in the absence of intervention from JPMC where, as here, the Premises stood vacant on a busy thoroughfare near a motel.

Furthermore, under Connecticut law, "[w]hen there is an intervening force between the defendant's action and the plaintiff's injuries, the test for determining proximate cause is whether the defendant's negligence was a substantial factor in causing the plaintiff's injuries and 'whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence....'" *Fleming v. Garnett*, 231 Conn. 77, 86, 646 A.2d 1308, 1313-14 (1994) (citations omitted).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Here, there is nothing to suggest that JPMC conduct, negligent or otherwise, was a substantial factor in causing the alleged damages. Furthermore, the damages and vandalism sustained was not of the same general nature as any foreseeable risk created by JPMC. In response to a subpoena, LPS has produced various documents detailing the preservation services provided to the Premises. See Local R. 56(a)(1) Statement at 57. Those documents, including photographs, indicate that LPS began providing preservation services on July 20, 2009 and continued to provide services through April of 2012. The records indicate "4/20 someone broke locksets - took fridge, dishwasher, beds, dressers, not secure against intruders. Needs securing ASAP as someone has been inside - doors unsecure broken windows/locks". *Id.* at 58. Consistent with Shujaat's account, LPS's reports during June 2011 indicate interior damage including vandalism and removal of copper pipe. *Id.* at 59. Although LPS was providing preservation services, LPS was not responsible for and was not the actual or proximate cause of the damage to the Premises. Likewise, the preservation services provided did not create any greater risk of vandalism and instead reduced the risk of vandalism that was inherent to an abandoned residence located along a major thoroughfare and near a motel, such as this. *Id.* at 29.

### G. Whether LPS's Entrances Onto The Premises Were Authorized

Furthermore, if it is shown that LPS entered the Premises, those entrances were expressly authorized by the Mortgage. As set forth above, in the event that Hashem "fail[ed] to perform the covenants and agreements contained in this Security Instrument . . . or . . . abandoned the Property, then [JPMC] may do and

- 9 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

pay for whatever is reasonable or appropriate to protect [JPMC]'s interest in the Proeprty and rights under the Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property." Local R. 56(a)(1) Statement at 63.

During Hashem's incarceration from November 2009 to May 25, 2012, he failed to take reasonable precautions to maintain the Premises. Local R. 56(a)(1) Statement at 12-17. Although Hashem claims that Shujaat was responsible for the Premises, they never had any conversations prior to or during Hashem's incarceration wherein Hashem asked or Shujaat agreed to maintain the Premises. *Id.* at 13-14. Hashem never asked Shujaat or anyone else to secure his valuables. *Id.* at 15. He never asked Shujaat or anyone else to do anything regarding his bank or financial accounts during his incarceration. *Id.* at 16. He also did not ask Shujaat to make mortgage payments while he was incarcerated. *Id.* at 17.

During Hashem's incarceration from November 2009 to May 25, 2012, the only precaution taken by Shujaat was that he would go to the Premises and stand in the driveway for 10 to 20 minutes. *Id.* at 18. Shujaat never mowed the lawn, cleaned up leaves or shoveled snow at the Premises. *Id.* at 19. Shujaat never paid any utility bills with respect to the Premises or entered the Premises to determine if there was heat. *Id.* at 20. Shujaat never repaired broken windows or tried to cover broken windows at the Premises. *Id.* at 24. Shujaat visited the Premises "every now and then", the frequency ranging from once a week to once a month. *Id.* at 24. Shujaat only entered the Premises when accompanied by someone else because he believes the Premises to be haunted. *Id.* at 25. Shujaat

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

never made any efforts to winterize the Premises. *Id.* at 26. From November 2010 to March 2011, Shujaat never entered the Premises. *Id.* at 27.

From the state of the Premises during Hashem's incarceration, including the lack of electricity, Shujaat testified that it may have been possible to determine that it was vacant just from looking at the Premises. *Id.* at 34. By all appearances, the Premises was abandoned and was not being maintained properly. Under Section 9 of the Mortgage, JPMC was well within its rights to take necessary action to save and protect the Premises. *Knight v. Wells Fargo*, 2013 WL 396142 (E.D.Mich. Jan. 8, 2013) (finding if any portion of Section 9 was met the Lender may take action to preserve the property). Any entry onto the Premises by LPS at JPMC's direction for this purpose was likewise authorized by the Mortgage.

### H.  Whether And When JPMC Had A Right To Access The Premises

By Hashem and Shujaat's own testimony, the Premises was abandoned while Hashem was incarcerated from November 2009 to May 25, 2012. From the state of the Premises during Hashem's incarceration, including the lack of electricity, Shujaat testified that it may have been possible to determine that it was vacant just from looking at the Premises. Local R. 56(a)(1) Statement at 34. Furthermore, Hashem has not made a single mortgage payment since 2008, before his incarceration. *Id.* at 5 and 65. Accordingly, under Section 9 of the Mortgage, JPMC had a right to intercede and do whatever reasonable and appropriate to preserve and maintain the Premises, at all times relevant.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## IV. CONCLUSION

For all the foregoing reasons as well as those set forth in the Motion for Summary Judgment and supporting Memorandum of Law, the defendant, JPMorgan Chase Bank, N.A., respectfully moves for the entry of judgment as a matter of law in its favor as to all counts of the Plaintiffs' Complaint.

DEFENDANT,
JPMORGAN CHASE BANK, N.A.

By /s/Meg R. Reid
Brian D. Rich
Fed. Bar No. ct24458
Meg Reid
Federal Bar No. ct28338
HALLORAN & SAGE LLP
225 Asylum Street
Hartford, Connecticut 06103
Tel: 860-522-6103
Fax: 860-548-0006
rich@halloransage.com
reid@halloransage.com

### CERTIFICATE OF SERVICE

This is to certify that on this 13th day of October, 2015, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/Meg R. Reid
Meg Reid

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
&SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105